UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
FEDERAL NATIONAL MORTGAGE        :
ASSOCIATION,                     :      **REPORT AND**
                  Plaintiff, :      **RECOMMENDATION**
                                 :
        -against-              :      23-cv-9022 (RPK)(PK)
                                 :
ACTIVE MANAGEMENT PROPERTIES LLC, :
ESTHER JACOBOWITZ, THE NEW YORK CITY :
ENVIRONMENTAL CONTROL BOARD and  :
JOHN DOES #1 THROUGH JOHN DOE #6, :
                                 :
                  Defendants. :
                                 :
-------------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

Federal National Mortgage Association ("Plaintiff" or "Fannie Mae") filed an action against Active Management Properties LLC ("Active Management"), Esther Jacobowitz ("Jacobowitz"), and the New York City Environmental Control Board ("ECB") (together with Active Management and Jacobowitz, the "Defendants")[1] to foreclose a mortgage encumbering the property located at 1111 Willoughby Avenue, Brooklyn, New York 11237 (the "Property"). (Complaint ("Compl."), Dkt. 1.)

Before me on referral from the Honorable Rachel P. Kovner is Plaintiff's Motion for Default Judgment of Foreclosure and Sale. ("Motion," Dkt. 23.) For the reasons stated herein, I respectfully recommend that the Motion be granted in part.

## FACTUAL BACKGROUND

**I.    Agreements Between the Parties**

On December 24, 2019, Active Management borrowed $805,000.00 from ICE Lender

---

[1] Additionally, Plaintiff named "John Does #1 through John Doe #6" as defendants "because they are or may be tenants or may be in possession of the Property, or may be corporations or other entities or person who claim, or may claim, a lien against the Property". (Compl. ¶ 72, Dkt. 1.) There is no indication that Defendants "John Does #1 through John Doe #6" were identified or served; thus, I respectfully recommend that they be dismissed from this case. *See* Fed. R. Civ. P. 4(m).

Holdings LLC and executed a Commercial Promissory Note (the "Original Note") in which the Active Management agreed to pay ICE Lender Holdings LLC, the holder of the Original Note, that amount plus interest. (Compl. ¶ 16.) Active Management simultaneously executed a Commercial Mortgage, Security Agreement and Fixture Filing (the "Original Mortgage Agreement") mortgaging the Property for $805,000.00, which was subsequently recorded in the Office of the Registrar of the City of New York on January 15, 2020. (*Id.* at ¶¶ 17.)

On June 8, 2020, ICE Lender Holdings LLC assigned the Original Note to Victoria Capital Trust, who in turn assigned it to Greystone Servicing Company LLC ("Greystone") on June 11, 2020. (*Id.* at ¶¶ 18-19.)

On June 15, 2020, Active Management borrowed an additional $195,000.00 and executed a series of notes and agreements. It executed a Gap Multifamily Note (the "Gap Note"), agreeing to pay the holder of the Gap Note $195,000.00 plus interest. (*Id.* at ¶ 20.) It simultaneously executed a Gap Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (the "Gap Mortgage Agreement") mortgaging the Property for an additional $195,000.00. (*Id.* at ¶ 21.)

The Original Note and Gap Note were then consolidated into a single Amended and Restated Multifamily Note (the "Note") in which Active Management agreed to pay Greystone the full combined amount of $1,000,000.00 plus interest. (*Id.* at ¶ 23; Ex. A to Compl., Dkt. 1-3.) Active Management also entered into a Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (the "Mortgage Agreement"), supplanting the Original Mortgage Agreement and the Gap Mortgage Agreement, by which the Property remained mortgaged for the combined amount of $1,000,000.00. (Compl. ¶ 23; *see* Mortgage Agreement at Ex. B to Compl., Dkt. 1-4.)

Active Management and Greystone additionally entered into a Multifamily Loan and Security Agreement (the "Loan Agreement") under which Active Management agreed to make monthly repayments on the mortgage from August 2020 to July 2030. (Compl. ¶ 25; *see* Loan Agreement at Ex. C to Compl., Dkt. 1-5.) Jacobowitz executed a Guaranty of Non-Recourse Obligations to and for the benefit of Greystone (the "Guaranty") guaranteeing personal liability for payment and performance of all amounts, obligations and liabilities due to Greystone as lender of the $1,000,000.00. (Compl. ¶ 26; *see* Guaranty at Ex. D to Compl., Dkt. 1-6.) Collectively, the Note, the Loan Agreement, the Mortgage Agreement, the Guaranty, and all related attachments and assignments constitute the "Loan Documents." Greystone contemporaneously assigned the Loan Documents to Fannie Mae. (Compl. ¶ 28; Ex. E to Compl., Dkt. 1-7.)

Plaintiff alleges that Active Management defaulted under the Loan Documents by failing to make a required monthly payment on August 1, 2023 and by failing to make monthly payments over the following months, as required by the Loan Agreement. (*See* Compl. ¶¶ 25, 46-50.) Under Section 14.01(a)(1) of the Loan Agreement, failure by Active Management to pay or deposit any amounts owed under the Loan Documents constitutes an "Event of Default." (Dkt. 1-5, at 74.) Plaintiff informed Active Management by letter (the "Demand Letter") on October 26, 2023 that it was in default. (Compl. ¶ 52; *see* Demand Letter at Ex. G to Compl., Dkt. 1-9.) Active Management failed to cure the default.

As of January 31, 2024, Active Management owed Plaintiff a total outstanding sum of $1,098,160.52. (Memorandum of Law in Support of Plaintiff's Motion ("Memo of Law") at 13, Dkt 24.)

## II. Requirements Under the Loan Documents

The Loan Agreement provides that on the first day of the month for a period of 120 months commencing in August 2020 and ending in July 2030, Active Management is to make a fixed Monthly

3

Debt Service Payment to Plaintiff as Greystone's assignee and the current owner and holder of the Note. (Compl. ¶ 25; *see* Loan Agreement, Art. 2.01(a) at 2, Art. 2.02(a)(3) at 3, Sch. 2 at 3.) As stated *supra*, any failure on the part of Active Management to make these Monthly Debt Service Payments constitutes an "Event of Default." (Compl. ¶ 40; *see* Loan Agreement, Art. 14.01(a)(1) at 74.)

If an Event of Default has occurred and is continuing, Plaintiff, as the current lender under the Loan Documents, may, among other things, "declare the entire amount of the indebtedness immediately due and payable, may institute judicial foreclosure proceedings, is entitled to the *ex parte* appointment of a receiver, and may invoke any other remedies permitted by the Loan Documents and New York law." (Compl. ¶ 41; *see* Mortgage Agreement, §§ 3, 5 at 8, 11.) Plaintiff is also entitled to expenses in connection with the exercise of its rights and duties under the Mortgage Agreement and any other Loan Document. (Compl. ¶ 41; *see* Mortgage Agreement, § 5(d) at 12.) If unpaid amounts under the Loan Documents remain due for 30 days or more, the applicable rate of interest shall accrue from the payment due date at the "Default Rate."[2] (Compl. ¶¶ 42; *see* Loan Agreement, Art. 2.02(d) at 4 and Sch. 1 at 3.) If unpaid amounts under the Loan Documents are not paid within 10 days of the payment due date, Active Management is additionally required to pay a "Late Charge."[3] (Compl. ¶¶ 43; *see* Loan Agreement, Art. 2.02(c) at 3 and Sch. 1 at 7.) If an Event of Default has occurred and is continuing, Plaintiff shall be entitled to receive all rents as they become due and payable, including rents then due and unpaid. (Compl. ¶ 33; *see* Mortgage Agreement, § 3(c) at 8.)

Pursuant to the Mortgage Agreement, Active Management agreed to repay any "Enforcement Costs" which includes:

---

[2] "Default Rate" is defined as "an interest rate equal to the lesser of: (a) the sum of the Interest Rate plus four (4) percentage points; or (b) the maximum interest rate which may be collected from Borrower under applicable law." (Loan Agreement, Sch, 1 at 3.) The Interest Rate under the Loan Agreement is 4.04%. (Loan Agreement, Sch. 1 at 7, Sch. 2 at 3.)

[3] "Late Charge" is defined as "an amount equal to the delinquent amount then due under the Loan Documents multiplied by five percent (5%)." (Loan Agreement, Sch. 1 at 7.)

4

>all expenses and costs, including reasonable attorneys' fees and expenses, fees and out-of-pocket expenses of expert witnesses and costs of investigation, incurred by Lender as a result of any Event of Default under the Loan Agreement or in connection with efforts to collect any amount due under the Loan Documents, or to enforce the provisions of the Loan Agreement or any of the other Loan Documents, including those incurred in post-judgment collection efforts and in any bankruptcy or insolvency proceeding (including any action for relief from the automatic stay of any bankruptcy proceeding or Foreclosure Event) or judicial or non-judicial foreclosure proceeding, to the extent permitted by law.

(Compl. ¶ 33; *see* Mortgage Agreement, § 1 at 2.)

Pursuant to the Guaranty, Jacobowitz "guarantees to Lender the full and prompt payment and performance when due . . . of all amounts, obligations, and liabilities owed to Lender under Article 3 . . . of the Loan Agreement . . . and all costs and expenses, including reasonable fees and out-of-pocket expenses of attorneys and expert witnesses, incurred by Lender in enforcing its rights under th[e] Guaranty." (Compl. ¶ 39; *see* Guaranty, Art. 3 at 2.)

Beginning on August 1, 2023, Active Management stopped making the required Monthly Debt Service Payments. (Compl. ¶¶ 46-51.) Pursuant to the Demand Letter, Plaintiff notified Active Management that it was in default due to its failure to make the Monthly Debt Service Payments since August 2023 and its failure to furnish annual and quarterly financial information by the dates required under the Loan Documents. (Compl. ¶ 52; *see* Demand Letter.) Pursuant to the Demand Letter, Plaintiff informed Active Management that the loan was thereby fully accelerated and that demand was thereby made for the immediate payment of the entire unpaid principal balance of the Note plus accrued and unpaid interest, costs and expenses, and other sums due under the Loan Documents. (*See* Demand Letter.) The Demand Letter also notified Active Management that Plaintiff may institute foreclosure proceedings, as well as exercise any other rights and remedies under the Loan Documents or otherwise available at law or equity. The Demand Letter notified Active Management that Plaintiff is entitled to all rents payable in respect of the Property and that Active Management was to hold any rents received after the occurrence of the Event of Default on trust for the benefit of Plaintiff.

5

(Compl. ¶¶ 53, 54; *see* Demand Letter.)  Active Management has not remitted any rents to Plaintiff. (Compl. ¶ 55.)

As of March 8, 2024, when Plaintiff filed its Motion, Active Management had failed to make all monthly payments since August 1, 2023.  (*See* Memo of Law at 3.)  Failure by the Active Management to satisfy its payment obligations under the Loan Agreement triggers the obligations of Jacobowitz under the Guaranty.  (*See* Memo of Law at 9.)  According to Plaintiff, a total amount of $1,098,160.52 was due under the Loan Documents as of January 31, 2024.  (*See* Memo of Law at 1.)

## PROCEDURAL BACKGROUND

Plaintiff initiated this mortgage foreclosure action on December 8, 2023.  (Compl.)  In addition to Active Management and Jacobowitz, Plaintiff has named the ECB as a defendant based on the existence of judgment-liens against the Property.  (Compl. ¶ 71.)

Plaintiff served each Defendant with the Complaint within 90 days of filing it.  (*See* Dkts. 8, 10.)  None of the Defendants timely filed an answer or otherwise appeared in this case.  The Clerk of Court issued Certificates of Default against Defendants on February 1, 2024.  (*See* Dkts. 14, 15.)

Plaintiff filed the Motion on March 8, 2024, seeking a judgment of foreclosure and sale and declaring that Defendants owe Plaintiff $1,098,160.52 under the Loan Documents.  (*See* Motion.) Plaintiff also seeks appointment of a referee for the purposes of effectuating foreclosure and sale of the Property and calculating any additional amounts due to Plaintiff.  (*See* Ex. A ("Proposed Order") to Plaintiff's letter ("Letter"), Dkt. 34-1.)

The Motion includes a copy of the Complaint (Dkt. 26-1); a Notice of Motion (Dkt. 23); Declarations in Support (Dkts. 25, 26); Memorandum of Law (Dkt. 24); and a Proposed Order (Dkt. 23-1).  Plaintiff served the Motion on each Defendant via U.S. Mail, serving Active Management at and ECB at their business addresses and Jacobowitz at her last known place of residence.  (*See* Dkt. 27 at 2; Loc. Civ. Rule 55.1.)

6

## DISCUSSION

### I. Legal Standard for Default Judgment

Federal Rule of Civil Procedure 55 governs the procedure that applies in cases where there is a default during the course of litigation. *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). It provides "a 'two-step process' for the entry of judgment against a party who fails to defend." *Id.* (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). Then, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

Failure to answer may constitute a default, as may failure to defend at later stages of litigation. *See* Fed. R. Civ. P. 55(a). Here, Defendants did not file an answer to the Complaint.[4]

"[A] default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true." *United States v. Myers*, 236 F. Supp. 3d 702, 706 (E.D.N.Y. 2017)). Thus, the court must accept the moving party's factual allegations as true and draw all reasonable inferences in its favor. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)). However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). A court must ensure that (1) jurisdictional requirements are satisfied, *see Mickalis*, 645 F.3d at 133; (2) the plaintiff took all required procedural steps in moving for default judgment, *see* Loc. Civ. R. 55.2; and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law. *See Finkel*, 577 F.3d at 84.

---

[4] On July 12, 2024, after default had been entered against ECB, a notice of appearance was filed on behalf of ECB. However, ECB has not subsequently filed an answer or response to the Complaint or moved to vacate the default entered against it, nor has it further participated in the case.

A court exercises significant discretion in deciding whether to grant a default judgment, including whether the grounds for default and the amount of damages are clearly established. *See Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *GuideOne*, 696 F. Supp. 2d at 208. The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991); *358 & 360 Atl. Ave. Holdings, LLC v. 358 Atl. Realty LLC*, No. 21-CV-168 (DG)(PK), 2023 WL 2969297, at *4 (E.D.N.Y. Mar. 1, 2023).

## II.   Jurisdictional and Procedural Requirements

A court from which default judgment is sought must assure itself that it has subject matter jurisdiction over the action. *See Mickalis*, 645 F.3d at 125-26 (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)). Before entering a default judgment, a court may, but need not, inquire as to whether it has personal jurisdiction over a defaulting defendant. *See id.* at 133 (citing *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010)).

This Court has subject matter jurisdiction over the present action pursuant to 28 U.S.C. § 1332, the federal diversity statute. The matter in controversy exceeds $75,000. (Compl. ¶ 8); *see* 28 U.S.C. § 1332(a). The parties are also citizens of different states. Plaintiff is a citizen of the District of Columbia. (Compl. ¶ 9); *see* 12 U.S.C. §1717(a)(2)(B) (establishing the "body corporate to be known as Federal National Mortgage Association" which "shall be deemed, for purposes of jurisdiction and venue in civil actions, to be a District of Columbia corporation"). Defendants are each citizens of New York. Active Management is a New York Limited Liability Company (Memo of Law at 7), and Jacobowitz is domiciled in New York. (*Id.*) Additionally, for purposes of personal jurisdiction, under a choice-of-law clause in the Loan Documents, Active Management and Jacobowitz have each submitted to the "exclusive jurisdiction" of the "state and federal courts and authorities with

jurisdiction in [New York]." (*See* Loan Agreement, Art. 15.01(b) at 81; Mortgage Agreement, § 12 at 16; Guaranty, Art. 20 at 8.)

ECB is an agency of New York City that cannot be sued; the City of New York is the proper party. *See* N.Y.C. Admin Code & Charter Ch. 16 § 396 ("All actions . . . shall be brought in the name of the city of New York and not in that of any agency. . . ."); *see, e.g.*, *Windward Bora LLC v. Thomas*, No. 20-CV-5320 (DG)(MMH), 2022 WL 14731628, at *4 (E.D.N.Y. Sept. 30, 2022); *Alleva v. N.Y. City Dep't of Investigation*, 696 F. Supp. 2d 273, 276 n.2 (E.D.N.Y. 2010), *aff'd*, 413 F. App'x 361 (2d Cir. 2011). "[T]he Court [instead] construes Plaintiff's claims against ECB as against the City, which is a citizen of New York." *Com. Lender LLC v. 413 Greene Realty 2014 Corp.*, No. 22-CV-2910 (HG)(PK), 2023 WL 7000877, at *3 (E.D.N.Y. Sept. 7, 2023).

The Court's exercise of personal jurisdiction over Defendants is appropriate.

As stated *supra*, Plaintiff properly served Defendants. Active Management was served through the New York Secretary of State. (Dkt. 8); *see* N.Y. Bus. Corp. Law § 306(b)(1). ECB was served through the City of New York's office at 100 Church Street in New York City. (Dkt. 8.) Jacobowitz was personally served. (Dkt. 10); *see* N.Y. C.P.L.R. 308(1).

Additionally, Plaintiff has demonstrated that it has taken the required procedural steps and submitted the required papers for the Motion. *See* E.D.N.Y. Loc. Civ. R. 7.1 (requiring that motion include notice of motion, memorandum of law, and supporting affidavits if necessary); 55.2(a) (requiring an affidavit declaring that the clerk has entered default, moving party has complied with Servicemembers Civil Relief Act, 50 U.S.C. § 3931, and that party against whom judgment is sought "is not known to be a minor or an incompetent person", and requiring proposed order and certificates of service); 55.2(c) (requiring a statement of damages).

Plaintiff submitted a Notice of Motion (Dkt. 23), the Memo of Law, and relevant exhibitions necessary for its Motion. (*See* Exs. 1-9 to Declaration of James Noakes ("Noakes Decl."), Dkts. 26

9

through 26-9; Exs. A-D to Declaration of Dean L. Chapman Jr ("Chapman Decl."), Dkts. 25 through 25-4.) Additionally, Plaintiff attached the Clerk's certificates of default (Ex. B and C to Chapman Decl., Dkts. 25-2, 25-3), a copy of the Complaint (Ex. 1 to Noakes Decl., Dkt. 26-1), and a proposed order (Ex. A to Motion, Dkt. 23-1), which was subsequently revised (Proposed Order). In its Motion, Plaintiff includes a declaration asserting that none of Defendants are an infant, in the military, or an incompetent person. (Chapman Decl. ¶ 5, Dkt. 25; *see* Fed. R. Civ. P. 55(b)(2); 50 U.S.C. § 3931). Plaintiff filed a statement showing proposed damages (Dkt. 26-9; *see* Dkt. 26 at 4) and the basis for each element of damages (*Id.*). Plaintiff has also certified service of the Motion (Dkt. 27), the motion for appointment of receiver (Dkt. 21), and the Clerk's certificates of default on Defendants (Dkt. 22).

### III.  Liability

A defendant who defaults admits all "well-pleaded" factual allegations in the Complaint, except those relating to damages. *358 Atl. Realty LLC*, 2023 WL 2969297 at *5; *Greyhound Exhibitgroup*, 973 F.2d at 158; *Windward Bora LLC v. Qazi*, No. 18-CV-6912 (DRH)(ARL), 2019 WL 2374847, at *2 (E.D.N.Y. May 16, 2019) (hereinafter *Qazi*). When determining liability, the Court accepts as true all well-pleaded allegations in the Complaint, drawing all reasonable inferences in favor of Plaintiff. *358 Atl. Realty LLC*, 2023 WL 2969297 at *5; *Au Bon Pain*, 653 F.2d at 65; *see Finkel*, 577 F.3d at 84. The Court may, but is not required to, conduct hearings if it needs to "establish the truth of any allegations by evidence" or "investigate any other matter." Fed. R. Civ. P. 55(b)(2). Even if the alleged facts are deemed admitted, they must nevertheless constitute legitimate causes of action. *See Mickalis*, 645 F.3d at 137 ("prior to entering a default judgment, a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" (alteration omitted) (quoting *Finkel*, 577 F.3d at 84)); *see 358 Atl. Realty LLC*, 2023 WL 2969297 at *5.

10

### A. Active Management

"To establish a prima facie case of mortgage foreclosure in New York, a plaintiff must show (1) a mortgage; (2) an unpaid note; and (3) proof of default." *1077 Madison St., LLC v. Smith*, 670 F. App'x 745, 746 (2d Cir. 2016) (citation to summary order)). If the plaintiff did not originate the loan, it is required to prove its valid and current ownership of the instruments. *Miss Jones LLC v. McCormick*, No. 16-CV-7129 (WFK)(RER), 2017 WL 4877437, at *2 (E.D.N.Y. Aug. 9, 2017), *R&R adopted*, 2017 WL 4898278 (E.D.N.Y Oct. 27, 2017). "[O]nce a plaintiff mortgagee in a foreclosure action has established a prima facie case . . . , it has a presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor." *Qazi*, 2019 WL 2374847, at *2 (quoting *United States v. Leap*, No. CV 11-4822 DRH WDW, 2014 WL 1377505, at *1 (E.D.N.Y. Feb. 18, 2014), *R&R adopted*, 2014 WL 1383139 (E.D.N.Y. Apr. 8, 2014)).

Plaintiff submitted both the Mortgage Agreement and the Note with its Motion. (*See* Dkts. 26-2, 26-4.) It also submitted proof of its current ownership of the Loan Documents. (*See* Dkts. 26-2, 26-6, 26-7; Noakes Decl., ¶ 5-11, Dkt. 26.) Pursuant to the Loan Documents, Active Management was obligated to remit monthly principal and interest payments. (*See* Loan Agreement, Art. 2.02(a)(1) at 2.)

The Loan Documents delineate the circumstances under which a default will occur and include an acceleration clause, whereby, if an event of default has occurred and is continuing, Plaintiff may declare the entire amount of the indebtedness immediately due and payable and may institute judicial foreclosure proceedings. (*See* Loan Agreement, Art. 14.01(a)(1) at 74, Art. 14.02(a) at 76; Mortgage Agreement, § 5 at 11; Noakes Decl., ¶¶ 40, 41.) Beginning on August 1, 2023 and continuing to the present, Active Management failed to remit the monthly principal and interest payments, thereby defaulting on the Loan Documents. They were notified of the default and the debt's acceleration. (*See* Demand Letter.)

Plaintiff has, therefore, established its entitlement to mortgage foreclosure against Active Management, as the borrower under the Loan Documents. By failing to appear in this action, Active Management has not rebutted the case against it. *See 358 Atl. Realty LLC*, 2023 WL 2969297 at *6 (holding the same).

Accordingly, I respectfully recommend that a default judgment of mortgage foreclosure be entered against Active Management.

### B. Jacobowitz

Jacobowitz acted as a guarantor but was not a mortgagor. As such, she did not default on the Mortgage Agreement and Note. However, the Guaranty provides that "a default under this Guaranty shall be an Event of Default under the Loan Agreement, and a default under this Guaranty shall entitle Lender to be able to exercise all of its rights under the Loan Agreement and the other Loan Documents." (*See* Guaranty § 6, Dkt. 26-5.) Further, a Guaranty "is appropriately enforced in the foreclosure action when the deficiency judgment is sought following the sale," and by naming Jacobowitz in this action, Plaintiff has preserved its right to seek a deficiency judgment against Jacobowitz after the foreclosure sale. *Letchworth Realty, LLC v. LLHC Realty, LLC*, No. 15-CV-06680 (FPG), 2020 WL 5361666, at *3 (W.D.N.Y. Sept. 8, 2020) (citing *Minin* v. 2494 Amsterdam Ave. LLC, No. 111122/10, 2011 WL 5295204, at *6-7 (N.Y. Sup. Ct. Oct. 27, 2011)) (collecting cases)); *see 358 Atl. Realty LLC*, 2023 WL 2969297 at *6 (holding the same).

Accordingly, I respectfully recommend that no default judgment of mortgage foreclosure be entered against Jacobowitz.

### C. Defendant ECB

Plaintiff seeks default judgment against ECB due to the judgment-liens it holds against the Property. (Compl. ¶ 71; *see* Memo of Law at 10.)

In an action for foreclosure of a mortgage, "[e]very person having any lien or incumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff" are necessary defendants. New York Real Property Actions and Proceedings Law ("RPAPL") § 1311(3); *see 358 Atl. Realty LLC*, 2023 WL 2969297 at *7. "Including these parties is important since 'the foreclosure action will extinguish the rights of all parties with subordinate interests in the property.'" *358 Atl. Realty LLC*, 2023 WL 2969297 at *7 (quoting *Miss Jones*, 2017 WL 4877437, at *3).

In cases where the City of New York or an administrative board thereof is named as a defendant affecting real property, the complaint must set forth "[d]etailed facts showing the particular nature of the interest in or lien on the real property and the reason for making such city a party-defendant." RPAPL § 202-a(1); *see 358 Atl. Realty LLC*, 2023 WL 2969297 at *7. Thus, for a court to grant a default judgment against any city defendants, a complaint should have more than just "bare allegations" that the city entities were necessary defendants because of possible liens encumbering the property. *358 Atl. Realty LLC*, 2023 WL 2969297 at *7 (citing *Onewest Bank, N.A. v. Cole*, No. 14-CV-03078 (FB)(RER), 2015 WL 4429014, at *4 (E.D.N.Y. July 17, 2015), *as amended*, 2016 WL 11395013 (E.D.N.Y. Jan. 19, 2016), *R&R adopted sub nom.* 2016 WL 1069951 (E.D.N.Y. Mar. 18, 2016).

Where a plaintiff is not seeking relief from non-mortgagor defendants, courts in this district have held that "entry of default judgment pursuant to Rule 55 is appropriate where the complaint alleges 'nominal liability,'-*i.e.*, any judgments or liens a defendant may have against the property are subordinate to the plaintiff's lien." *OneWest Bank, N.A. v. Raghunath*, No. 14-CV-3310 (RJD), 2015 WL 5772272, at *3 (E.D.N.Y. Sept. 8, 2015); *see Wells Fargo Bank, N.A. v. Landi*, No. 13-CV-5822 (RRM), 2015 WL 5657358, at *2 (E.D.N.Y. Sept. 22, 2015); *E. Sav. Bank, FSB v. Rabito*, No. 11-CV-2501 (KAM)(VVP) 2014 WL 4804872, at *7 (E.D.N.Y. Sept. 10, 2014); *Bank of America, N.A. v. 3301 Atlantic, LLC.*, No. 10-CV-5204 (FB), 2012 WL 2529196, at *14 (E.D.N.Y. June 29, 2012); *Christiana Bank & Trust Co. v. Dalton*, 6-CV-3206 (JS)(ETB), 2009 WL 4016507, at *5 (E.D.N.Y. Nov. 17, 2009).

Where pleading nominal liability, plaintiffs should "specif[y] in great detail the nature of the interest held by all such defendants." *Wells Fargo Bank, N.A. v. Landi*, No. 13-CV-5822 (RRM), 2015 WL 5657358, at *3 (E.D.N.Y. Sept. 22, 2015).

Additionally, "where . . . the lien exists by virtue of a judgment, the complaint must also provide 'the name of the court, date recorded, clerk's office in which filed, the names of the parties against whom and in whose favor such judgment was recovered and a brief description of the grounds for or the nature of such judgment.'" *358 Atl. Realty LLC*, 2023 WL 2969297 at *7; *see Miss Jones, LLC v. Brahmadutta Bisram*, Y & S Dev. of N.Y., Inc., No. 16-CV-7020 (NGG)(SMG), 2018 WL 2074200, at *4 (E.D.N.Y. Feb. 5, 2018) (quoting RPAPL § 202-a(2)), *R&R adopted sub nom.*, *Miss Jones LLC v. Bisram*, 2018 WL 2074205 (E.D.N.Y. Feb. 22, 2018). "Title-search documents showing amounts owed to city agencies are sufficient to meet a plaintiff's obligations under Section 202-a(1)." *358 Atl. Realty LLC*, 2023 WL 2969297 at *7 (quoting *Miss Jones*, 2018 WL 2074200, at *4); *see also Windward Bora, LLC v. Thompson*, No. 18-CV-1811 (NGG)(RML), 2020 WL 1242828, at *6 (E.D.N.Y. Mar. 16, 2020) (finding documents demonstrating property had ECB violations sufficient to satisfy heightened pleading requirement).

ECB is a New York City agency (Compl. ¶ 13), so Plaintiff is required to provide detailed facts showing the nature of its interest in or lien on the Property. *358 Atl. Realty LLC*, 2023 WL 2969297 at *8 (stating the same where ECB had issued judgments against a property); *see* RPAPL § 202-a. Plaintiff has stated that ECB has issued four judgments against the Property docketed between October 2020 and October 2023, resulting in a total charge of $6,850.00, related to: "(a) two violations issued by the New York City Department of Buildings (Violation Nos. 039086248R and 039086249Z), each carrying a penalty of $3,125.00, for failure to maintain the boilers in compliance with the city code; and (b) two violations issued by the New York City Department of Sanitation (Violation Nos. 042238354Z and 047686501K), each carrying a penalty of $300.00 each, for 'dirty sidewalk' and 'fail

14

to clean 18" into street' violations." (Compl. ¶ 58.) These assertions are sufficiently detailed for the Court to conclude that the ECB penalties were incurred after Plaintiff's mortgage lien was recorded.

Under New York law, "a properly recorded mortgage is superior to subsequently recorded mortgages." *Gletzer v. Harris*, 909 N.E.2d 1224, 1226 (N.Y. 2009). "[L]iens are similarly recorded." *Id.* "In New York, a mortgage is a 'specific lien on the land' and is 'superior to the claims of subsequent judgment creditors.'" *CIT Bank, N.A. v. Vasquez*, No. 17-CV-4654 (MKB)(PK), 2019 WL 4418883, at *5 (E.D.N.Y. Aug. 19, 2019), *R&R adopted*, 2019 WL 4415291 (E.D.N.Y. Sept. 16, 2019) (citing *Sav. & Loan Ass'n of Kingston v. Berberich*, 24 A.D.2d 187, 189, 264 N.Y.S.2d 989, 991 (3d Dep't 1965)); *see Dep't of Hous. Pres. & Dev. of City of New York v. Ferranti*, 212 A.D.2d 438, 438, 622 N.Y.S.2d 717, 717 (1995) (finding that a "judgment became a lien upon the subject real property at the time it was docketed"). Each of the ECB judgments were docketed after Plaintiff's mortgage loan was recorded against the Property. (Compl. ¶¶ 58, 71; Memo of Law at 11.) Thus, Plaintiff's mortgage is superior to the judgment-liens held by ECB.

Accordingly, I respectfully recommend that default judgment against ECB be entered.

### IV. Relief Sought

#### *A. Judgment of Foreclosure and Sale*

Plaintiff has established its *prima facie* entitlement to a judgment of foreclosure, and therefore, I respectfully recommend that a judgment of foreclosure and sale of the Property be entered.

Plaintiff has identified two potential senior liens on the Property, one a mortgage made to Homex Funding Corp. to secure $405,000 and recorded on September 8, 2004 (the "Homex Mortgage") (*see* Letter at 2), which Plaintiff suspects but has not been able to confirm has been satisfied; and the other a judgment dating from January 25, 2018 and docketed against the Property on January 25, 2018 in the amount of $2,000 by the New York State Division of Housing and Community Renewal (the "DHCR Judgment"). (Dkt. 34.)

15

Because Plaintiff's judgment was recorded after the Homex Mortgage and the DHCR Judgment, it is subordinate to these potential liens. Plaintiff requests that the foreclosure and sale be granted subject to any existing senior liens, recognizing that the potential liens under the Homex Mortgage and the DHCR Judgment are senior to Plaintiff's mortgage.

Senior lien holders are neither necessary nor proper parties to a junior mortgagee's foreclosure action. *Courchevel 1850 LLC v. 464 Ovington LLC*, No. 16-CV-7185 (NGG)(RER), 2019 WL 1492347, at *3 (E.D.N.Y. Mar. 31, 2019) (citing *E. N.Y. Sav. Bank v. Alston*, 547 N.Y.S.2d 198, 199 (N.Y. Sup. Ct. 1989) ("[N]ecessary defendants are those whose interest is claimed to be subject and subordinate to the plaintiff's lien. . . . The only proper parties to a foreclosure action are the mortgagee and mortgagor and those who have acquired rights under them subsequent to the mortgage") (quoting RPAPL § 1311; *Stevens v. Breen*, 16 N.Y.S.2d 909, 912 (N.Y. App. Div. 1940)) (quotation marks omitted); *see also Berrara v. City Real Est. Co.*, 64 F.2d 498, 499 (2d Cir. 1933) (trustees holding a senior claim to the mortgagor's estate were "no more necessary to . . . determination [of the junior mortgagee's foreclosure claim] than would be the owner of a mortgage that was senior in date to the one being foreclosed").

Further, the court's determination of a junior lienholder's foreclosure claim will not affect the rights of the senior lienholder. *See Courchevel 1850*, 2019 WL 1492347, at *3 ("[i]f the court here finds in favor of [the second mortgagee], that will not affect the rights asserted by [the first mortgagee] in the State Proceeding"); *Commercial Trading Co., Inc., v. Little N. Parkway Realty Corp.*, 245 N.Y.S.2d 731, 733 (N.Y. Sup. Ct. 1963) ("no existing rights of the first mortgagee . . . can be adversely affected by the foreclosure of the second mortgage").

Thus, the Court may grant foreclosure on the property, which remains subject to the senior liens. *See* Bergman on New York Mortgage Foreclosure § 27.07 ("Where . . . there is a senior mortgage, the lien survives and the bidder at the sale takes title subject to that lien.").

### B. Amount Due to Plaintiff

Plaintiff requests that the Court "confirm the total amount due it under the Loan Documents, i.e., the so-called 'strike price' which will be directly relevant to conducting the foreclosure sale and properly distributing the proceeds thereof." (Memo of Law at 12.)

Plaintiff has stated in a detailed affidavit that a total amount of $1,098,160.52 was due as of January 31, 2024. (Noakes Decl. at 4; *see* Memo of Law at 13.) It has also provided documentary evidence supporting this amount. (*See* Ex. 9 to Noakes Decl. ("Payoff Statement"), Dkt. 26-9; Ex. D to Chapman Decl. (attorney invoices), Dkt. 25-4; *see also* Loan Agreement, Art. 2.02(c) and (d) at 3, Art. 2.03(d) at 7.) This amount consists of the outstanding principal balance ($947,102.88), interest at 4.04% ($22,851.49), additional default interest at 4.00% ($19,363.00), a tax advance ($1,534.34), prepayment premium ($37,884.12), legal costs and expenses ($65,778.42), late fees ($2,398.60), return check fee ($200), replacement reserve fee ($250), UCC termination fee ($200), and release fee ($600), less a replacement reserve fee credit owing to Active Management to be offset against the total amount outstanding ($2.33). (Noakes Decl. at 4; *see* Memo of Law at 13).

Accordingly, I respectfully recommend that Plaintiffs be awarded $1,098,160.52 due pursuant to the Loan Documents as of January 31, 2024.

### C. Appointment of Referee

Plaintiff has requested that a referee be appointed to conduct the foreclosure sale and make appropriate calculations regarding additional amounts accrued from February 1, 2024 through the date of the foreclosure sale. (Proposed Order.)

"[C]ourts routinely appoint referees to effectuate the sale of foreclosed properties." *358 Atl. Realty LLC*, 2023 WL 2969297 at *8 (quoting *E. Sav. Bank, FSB v. Robinson*, No. 13-CV-7308 (ADS)(SIL), 2016 WL 3365091, at *11 (E.D.N.Y. May 9, 2016), *R&R adopted sub nom. E. Sav. Bank v. Robinson*, 2016 WL 3102021 (E.D.N.Y. June 2, 2016)).

17

Case 1:23-cv-09022-RPK-PK   Document 52   Filed 03/14/25   Page 18 of 19 PageID #: 1389

Accordingly, I respectfully recommend that a referee be appointed to conduct the foreclosure sale and make appropriate calculations regarding additional amounts accrued from February 1, 2024 through the date of the foreclosure sale. *See 1077 Madison St., LLC v. Daniels*, 954 F.3d 460 (2d Cir. 2020) (referee appointed to compute and report the amounts due in a mortgage foreclosure action). Plaintiffs should be directed to provide the name of a proposed referee whom the Court shall appoint to conduct the foreclosure and sale. *358 Atl. Realty LLC*, 2023 WL 2969297 at *8 (citing *Miss Jones*, 2018 WL 2074205, at *1 (directing plaintiff to provide list of prospective referees to be appointed to effectuate foreclosure and sale of the property)).

## **CONCLUSION**

Based on the foregoing, I respectfully recommend that judgment of mortgage foreclosure and sale be entered against Active Management, but not against Jacobowitz; that default judgment be entered against Defendant ECB; that a total amount of $1,098,160.52 due as of January 31, 2024 be confirmed; and that the Plaintiff be directed to provide the name of a referee whom the Court will appoint to effectuate the foreclosure and sale of the Property, subject to any senior liens, and to make appropriate calculations regarding additional amounts, if any, accrued from February 1, 2024 through the date of the sale.

Plaintiff is directed to serve this Report and Recommendation on Defendants forthwith and file proof of service on the docket by March 14, 2025. Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any just objection waives the right to further judicial review of this

18

...

Report and Recommendation. *358 Atl. Realty LLC*, 2023 WL 2969297 at *8 (citing *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008)).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         March 14, 2025